Good morning, your honors. Gary Burcham on behalf of the appellant Kevin Keller. The primary issue in this case concerns the district court's admission of the infamous government's exhibit 33, the fu.doc computer file, which was introduced by the government in this case in chief. The government does not defend the admission of exhibit 33 under Rule 803-6 in its brief. It simply falls back and defers to the position that regardless of whether this exhibit was admissible as a business record, it was admissible not for its truth to prove the state of mind of the author of the document. If the court has no questions concerning 803-6 admissibility, I'll get straight to the government's. Is the standard of review, though, abuse of discretion? In other words, we would have to find that Judge Huff's decision to admit the document could not be sustained on an abuse of discretion standard under the alternative theory, which is to show an attitude on the part of the fraud conspirators towards people who sought refunds. Correct. The standard of review is abuse of discretion, but we submit that Judge Huff severely abused her discretion in admitting this document, whether it was an 803-6 business record or whether it was for the non-hearsay, non-truth purpose of establishing a state of mind. But if the whole purpose of the fraud was to induce these poor, I guess, what, primarily black or minority victims to part with money with no intention of ever honoring refund requests, why does the title of that document not demonstrate some evidence of contempt on the part of the conspirators for their victims who sought refunds? I think a couple of responses to that, Judge Talman. First of all, if this evidence is submitted for the proving the state of mind of the author, then it's relevant to the state of mind of the author. The problem we have in this case is we still don't know who the author of that document was. Well, you don't dispute that your client signed the bulk of the letters denying refunds, do you? Not at all. In fact, Mr. Keller introduced in his case, Defense Exhibit L, a copy of that draft letter. So where's the harm there? Essentially, as I understand it, the government was asking the jury to infer that since the template was identical, even though it was carried under a file folder that you, I think, proved could not necessarily be linked to your client, you don't dispute the fact that he did indeed sign letters which were virtually word for word identical to the template that was filed under that profane title. Exactly. The problem in this case is not the Microsoft Word document itself. The problem is the screenshot with the name of that file which the government attributed to Mr. Keller for essentially the entire trial. Well, let me ask the question a different way, getting back to my standard of review question. If that is the state of the record, how is it an abuse of discretion for Judge Huff to admit this document in order to show the state of mind of the person who signed the letters denying refunds to the victims? Because there was never a showing that the file that Mr. Keller used to create those refund rejection letters included this same file title. Essentially, what Exhibit 33 was, what was probably or perhaps the first creation of this draft letter. Perhaps not. That's the problem. We don't know exactly how. I guess what I'm really asking, what difference does it make if he signed the letters and the wording of the letter is essentially identical to the document that's contained in this file folder and the jury is being asked to consider whether or not when he signed the letter denying refunds it was with the intent previously formed not to honor any refund request because the purpose was to get the victims to part with their money. That's a circumstantial inference that the jury is being asked to make, but it seems to me a fair inference to be drawn by a reasonable fact finder on the facts that you concede. If the government could have established that Mr. Keller either drafted, created that computer file with that name or used that computer file with that name and acquiesced to that being the name of the file for that letter, then I think the government or the district court's admission would be defensible. But in this case, Mr. Keller has, there was no evidence at trial that Mr. Keller had any ties whatsoever to the naming of that document. Yes, there was evidence. Wasn't he prosecuted for a conspiracy? He was. That was count one. And who were the other alleged co-conspirators? The other gentleman who testified at trial, Dennis Foster as well. And it was your theory that it was Foster who created the document. Exactly. It was in Dennis Foster's folder. If he was a co-conspirator, why isn't Keller liable under Pinkerton for the acts of Mr. Foster in furtherance of the common goals of the conspiracy? Well, again, we don't know if Dennis Foster created the file. And even backing up further... Wait, wait, wait, wait. You just answered my question and said it was a defense theory that it was that Foster was the guy who did it, not Keller. It was someone besides Keller. It was in Foster's folder. Counsel, did you or did you not answer my question and say it was the defense theory that Foster authored the document? That wasn't the defense theory. All right. So let's not engage in further speculation if that was your theory at trial. So how under Pinkerton is it unfair to charge Keller with what Foster did? Well, I think, number one, there's no evidence that that would be in furtherance of any conspiracy that existed during the time. And intent not to refund the money to the victims when they sought refunds when they discovered the fraud? Why is that not relevant to intent to defraud? Well, I think even backing up a little further, we don't even know that the vulgar name of this title had any relation at all to the people who were requesting refunds. If you copied the server... You think it was just a coincidence that it happened to be the name of the file folder that contained the template of the letter refusing to refund the money? It could have been. The name of that document... What's your next argument? Well, this essentially, I think, comes down to relevance and the 403. Isn't it more of a 403 argument? You're fighting an uphill fight, at least with me, convincing me that it's not relevant. The thrust of your argument is that this is just too unfairly prejudicial. It hurts too much, and the judge shouldn't have let it in because it's such a terribly profane title. Exactly. It sounds like I'm losing on relevance. But the way in which this document came into evidence was bizarre, to say the least. The first thing the district court did was admit the CD-ROM of the entire server from PHP, which included files that I don't think anyone knew were included on that disk. And then immediately, without any warning to the district court or to the defense, that file was popped up on the screen in front of the jury, and the name of the title was said before the jury. And the first thing that happened when that occurred is the district court piped up and said a lack of foundation, 403, and required the government to get that document down off the screen. So I think at that point in trial, that was when the relevance of this document was at its greatest. You're arguing relevance again. I thought we'd moved on to prejudice. We are. Tell me why it is so unfairly prejudicial that it violated your client's constitutional right to due process in a fair trial. Because there's no evidence that Mr. Keller ever had any idea that the draft refund letter that he was using to send to clients ever was named with this title. There was never any evidence that the title of this computer file was known by Mr. Keller, whether people in the office talked about it or joked about it. If that happened, then certainly I think it would be relevant. But the language of the letter itself, as I recall, talks about the fact that the board has met and I've presented your claim to the board, and we're very sorry, but the board has directed me to tell you that we're not going to pay it. And wasn't there testimony from Foster and others that there were no board meetings and that nobody ever presented these claims to the directors, that Keller signed a letter knowing full well that the contents of it were false? This case is replete with what Mr. Keller called the gray area, representations made that weren't exactly right and statements made that weren't exactly right. But what Mr. Keller testified to in his direct testimony was, in my mind, we were doing a job that was getting people who otherwise could not buy houses into houses. And in his mind, even though it was not a perfect business model, even though in his mind there was a gray area in many areas of the business, he was working very hard to do what the business was designed to do, which is to help people who otherwise could not purchase houses purchase houses. And when the jury saw Exhibit 33 up on the screen and heard the name of the file stated in open court and heard the government repeatedly infer that Mr. Keller was the one who created that document, that really was devastating evidence against Mr. Keller. And that's the basis for the 403 violation. I'll reserve my final. I'll give you a minute for rebuttal. Let's see what the government has to say. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honors, as Judge Tallman points out, the standard of review here is extremely deferential to the district court. And we would submit that Judge Huff did not abuse her discretion. And as Judge Pais pointed out, one of the most central aspects of this case is that it was charged as a conspiracy. A lot of the defense arguments, they want to keep coming back to this premise that the only relevance of this document was that the defendant was shown to be the author. But when you talk about a conspiracy by definition, you have to prove the existence of other people. So even without evidence that the defendant was the particular author of this document, it's still relevant to conspiracy. Another point it's important to keep in mind, this company, PHP, it wasn't as big as Microsoft or some huge multi-thousand employee firm. This was a very small, closely held company. They only had four or five principals. And when you talk about a small company like that, and that a computer file is found on the premises of this company with this title, and that document, as we point out in our brief, it's not the company picnic flyer. It's not just some personal journal. It's a rough draft, as the defense concedes, of the document later used to reject refunds. I think relevance is definitely shown. Now, as far as prejudice, in this case, yes, we noted below that this is an inflammatory title, but that's exactly the point. And the analogy that the government would draw would be to, let's say, a racial discrimination case under Title VII. If there's evidence that somebody's uttered a racial epithet, the very probative value of that epithet comes from the fact that it's pejorative and that it is offensive. And in this case, when you talk about 1,400 clients, only 100 of which ever got homes, when the whole program was based about guaranteeing home ownership with no money down, and then when you specifically look to the refund process, which wasn't collateral, as we point out in Supplemental Excerpt Record 3 and 5, pages 3 through 5 of the redacted indictment, there are multiple allegations about the refund process in the indictment and how it was filled with deceptive practices. And if the whole point of a fraud is to wrongfully appropriate money from victims, a failure to give refunds is central to that fraud because it's keeping the monies that are wrongfully obtained. So when the Court looks to its jurisprudence on 403, it talks about unfair prejudice. All evidence that's relevant that proves the government's case is, of course, prejudicial to the defense, and they want to keep it out. But when you have this kind of a document here which goes directly to the mens rea and directly to an evidence of fraudulent intent at the company, it's not an emotional response that's not based on the evidence. It's directly tethered to the probative value of that evidence. And we'd also point out the district court took steps. For instance, Judge Huff forbade the parties from ever speaking the title of this document throughout the rest of trial. So it's not as if the judge was completely oblivious to Rule 403 concerns. And as far as the attribution of authorship, again, there's a theme that runs throughout the defense's papers that it was unfair even to ask him about this. He was, by his own admission, in charge of the refund process. The three principals that cooperated with the government, they all testified without dispute that the defendant was in charge of the process. So, therefore, it wasn't unfair to put these questions to him. How is it that there was no pretrial motion to address this issue before the trial even began? I can't explain that, Your Honor. As we point out in our papers, we gave the defense notice of this. Not only did we put it in a brief, I believe it was filed in March of 2002, and it was directly stated in that brief that this was the title of that document. The record also reflects that we turned over a copy of this, I believe April 4th of 2004, which was the motion in limine hearing. Given the title of that document, I was surprised that the judge was dealing with it when it gets flashed up on the screen. I thought that was a little surprising. I suppose it is, Your Honor. And, you know, sometimes trials, they're events that are in progress. I think here the prosecutors can reasonably, having given this prior notice and without any objection, that when this document was then adduced that it would be dealt with at the time. And the other thing to point out is I know the defense wants to create sort of the shock value impression. The judge, if you read the record, within a minute took that exhibit off the Elmo, so I think that also shows that prejudice was minimized. I just have one other minor question regarding the restitution that was awarded here. Okay. The judge used a different amount for fixing the advisory guideline range and then for fixing the amount of restitution. You know, I don't know that there's anything wrong with that. I couldn't pinpoint it down to a regulation or statute, but it is a little bit odd. I won't deny that, Your Honor. I mean, when I reread the record last night, I think what the court basically did, if anything, she was cutting the defendant a break. I mean, that resulted, I believe it was a six or a seven-month swing in sentence because, as we point out, I know the defense, they sometimes use words like the judge rejected our loss evidence. That evidence was largely undisputed. The only dispute about loss was at the time of sentencing, defense counsel was arguing based on Apprendi that loss should be limited to those victims who testified. That was the only evidence that the defense put forward. We relied on that summary chart from FBI analyst Herod, and she testified at trial, and she worked, I believe, 18 months on this because there were so many victims. What she basically did was she made a list of all the victims and the fees that they paid. Those, you know, it wasn't called the down payment, but it was the program fee, and it was going to be either $1,500 minimum or one month's gross payment, whichever is greater. That evidence, I don't think, if there's nothing in dispute of that, that was basically uncontradicted. I don't know why the district court did that either. But she uses the word to account for potential overcounting, and I think that's important to point out. She never says, oh, you know, I think there's a problem at page 12, or maybe your calculation here wasn't correct. I think she was just basically giving a break. And the other thing we'd also point out is that this issue, there was never any objection to this below. And there's a case that we cite in our brief. We believe that this issue isn't even properly preserved for review. Okay. And the very last thing I'll say shortly, Your Honor, too, is just as far as the prejudice. I reread the transcript of the closing argument yesterday. I think it's important to keep in mind it's 62 pages long. I believe the government summation, 45 pages from AUSA Bhandari, the rebuttal from AUSA Spong, 17 pages, or 15. Only one time was there ever mention of this Exhibit 33. One time it came in the middle of the first one, and one time in the middle of the second. So it didn't materially affect the verdict. If there are no further questions, we would submit. Your Honors, Judge Huff excluded this Exhibit at the time when the Court was being told that Mr. Keller drafted it. Later on in trial, when that became, when it became evident that that was not the case, it admitted it. So it doesn't make any sense that the District Court would have followed that course. The government admitted in its brief after trial. Followed what course? I don't quite follow that. Excluding the evidence when it believed Mr. Keller was the drafter of the document, yet admitting the evidence later on when it became evident that perhaps he was not the person who drafted the document. When the relevance of this was at its highest, the evidence was excluded. When it was at its lowest, in my opinion, Judge Tallman, it was admitted by the District Court. The government admitted this was very inflammatory, and this was a close case. Mr. Keller, in his direct testimony, gave specific responses to everything that was raised in the government's case in chief. It was a close case. Mr. Keller honestly believed that he was working for a legitimate company, working very hard to get people into houses. It was a close case, but when Exhibit 33 was considered by the jury for seven or eight days and attributed to Mr. Keller improperly, I think that was what led to the verdict. So I'll submit on that. Okay. Thank you. Thank you, Counsel. The United States v. Keller will be submitted at this time.
judges: Noonan, Paez, Tallman